UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ROSA BRIZZI,

              Plaintiff,

  - against -

UTICA MUTUAL INSURANCE COMPANY,

              Defendant.
----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
18-CV-4973 (RRM) (RER)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Rosa Brizzi brings this action against Utica Mutual Insurance Company ("Utica"), alleging (i) violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; and (ii) discrimination on the basis of disability in violation of the New York State Human Rights Law ("NYSHRL") § 296 *et seq*. (Am. Compl. (Doc. No. 6).) Before the Court is Utica's motion for summary judgment (Mem. of Law (Doc. No. 29)). For the reasons explained below, Utica's motion is granted in part and denied in part.

BACKGROUND

**I.    Factual Background**

      The relevant facts outlined below are drawn from the parties' Local Rule 56.1 Statements of Material Facts, as well as evidence submitted by the parties in connection with the motion for summary judgment. Unless otherwise noted, the facts are undisputed.

      Brizzi began her employment as a Customer Service Representative in the Records Department of Utica in January 1993. (Defendant's Rule 56.1 Statement ("Def.'s SOF") (Doc. No. 35) at ¶ 6; Plaintiff's Response to Defendant's Rule 56.1 Statement ("Pl.'s Resp. SOF") (Doc. No. 43 at ¶ 6.) After voluntarily leaving Utica in 1997 to work for another company, Brizzi returned to Utica in 2003 as a Customer Service representative in the Services

Department. (Def.'s SOF ¶ 7; Pl.'s Resp. SOF ¶ 7.) In 2006, she was promoted to the position of Marketing Trainee where her responsibilities included "getting forms together for agents, preparing for meetings, getting the proper forms for those meetings, planning events." (Def.'s SOF ¶¶ 10–11; Pl.'s Resp. SOF ¶¶ 10–11.)

From October 19, 2006, through June 5, 2007, Brizzi went on maternity leave and medical leave to treat cancer. (Def.'s SOF ¶¶ 12–14; Pl.'s Resp. SOF ¶¶ 12–14.) Brizzi returned to work as a Marketing Trainee on a part-time basis under the Family and Medical Leave Act ("FMLA") on June 5, 2007, and resumed full-time work on October 22, 2007. (Def.'s SOF ¶¶ 15–17; Pl.'s Resp. SOF ¶¶ 15–17.) Brizzi received additional accommodations in 2014 and 2015 to modify her work schedule to work from home during certain times. (Def.'s SOF ¶¶ 39–44; Pl.'s Resp. SOF ¶¶ 39–44.)

In 2017, Brizzi required several surgeries and medical procedures which necessitated leave and Utica repeatedly granted short-term leave. (Def.'s SOF ¶¶ 20–32; Pl.'s Resp. SOF ¶¶ 20–32.) That same year, Utica underwent a national consolidation, which resulted in the combination of clerical and marketing support. (Def.'s SOF ¶ 46; Pl.'s Resp. SOF ¶ 46.) Brizzi's position was one of fourteen positions affected by the consolidation. (Def.'s SOF ¶ 49; Pl.'s Resp. SOF ¶ 49.) The positions of Marketing Trainee and Receptionist were consolidated into one position with the title of Administrative Assistant – Regional Operations. (Def.'s SOF ¶ 55; Pl.'s Resp. SOF ¶ 55.) According to Utica, the consolidation of Brizzi's position required one full-time employee in Utica's Woodbury, New York, office because that person was responsible for greeting visitors and filing documents. Brizzi disputes that the position necessitated a full-time employee in the office. (Def.'s SOF ¶¶ 52, 56, 58; Pl.'s Resp. SOF ¶ 52.) However, it is undisputed that, prior to the reorganization, the Receptionist position was filled by

2

a full-time, in-office employee. (Def.'s SOF ¶ 59; Pl.'s Resp. SOF ¶ 59.) The pay for the Administrative Assistant position was less than Brizzi's then-current position as a Marketing Trainee. (Ex. G to Brizzi Opposition to Mem. of Law ("Opp.") (Doc. No. 40) at 79–81, DEF-166–68.)[1]

Even though Brizzi was on leave in November 2017 when the consolidation decision was made, Brizzi's manager, Thomas Weigand, and Karen LaPlante, who worked in Human Resources ("HR") at Utica, decided to inform Brizzi about the change while she was on leave so that she would not find out about the consolidation from the public announcement. (Def.'s SOF ¶¶ 48, 50; Pl.'s Resp. SOF ¶¶ 48, 50.) Weigand and LaPlante offered Brizzi the Administrative Assistant – Regional Operations position. (Def.'s SOF ¶ 62; Pl.'s Resp. SOF ¶ 62.) According to Utica, Weigand and LaPlante informed Brizzi that the position would be held open for her until she returned from her leave. (*Id.*)

Brizzi disputes that Weigand and LaPlante offered to hold the position open for her until she returned from leave. (*Id.*) In support, Brizzi cites to a document prepared by LaPlante in preparation for Weigand and LaPlante's November call with Brizzi to inform her that her then-current position had been terminated. (Pl's Counter-Statement, ¶ 29; Ex. G to Opp. at 79–81, DEF-166–68.; Exhibit O to Colwin Decl., Excerpts from LaPlante Deposition at 65:24–66:15.) The document states:

> If you are medically released to return to work before December 29th, you will have the following options: If the Administrative Assistant position has <u>not yet</u> been filled, we would offer you the full time, in the office position at that time. . . If the Administrative Assistant position has been filled, you will be eligible for our Severance benefit and your date of termination would be your medically approved return to work date.

---

[1] Brizzi's opposition to Utica's motion for summary judgment and accompanying exhibits were filed as one single PDF, with the exhibits appearing between ECF pages 1–95 and the memorandum of law appearing at end of the document, ECF pages 96–122.

(Pl.'s Resp. SOF ¶ 62, Ex. G to Opp. at 79–81, DEF-166–68.)

Brizzi responded to Weigand and LaPlante that she was concerned about the Administrative Assistant position because she had to be home to care for her son and elderly mother.  (Def.'s SOF ¶ 65; Pl.'s Resp. SOF ¶ 65.)  However, it is contested whether Brizzi declined the Administrative Assistant position on this call.  Utica claims that Brizzi was given the option to hold open the Administrative Assistant position for her until she returned from leave but she declined.  (Def.'s SOF ¶ 68.)  This claim is substantiated by a letter that LaPlante sent Brizzi memorializing their conversation, which explains that Brizzi's original position was eliminated and that "although [Brizzi] was offered another position – Administrative Assistant, [she] declined it, since it is a full time, in the office position."  (Pl.'s Resp. SOF ¶ 68, referencing Ex. B, DEF-690.)  However, in her deposition testimony, Brizzi denied that she declined the position when it was offered to her.  (Pl.'s Resp. SOF ¶ 71, Ex. A, Brizzi Dep. at 106:16–107:5.)

It is also contested whether Brizzi requested a reasonable accommodation when she was offered the new position.  At her deposition, Brizzi testified that she asked Weigand whether "he would consider going part time, so [she] could go through cancer treatments," and also that she "asked Mr. Weigand if they would consider getting two part-timers so [she] could continue [her] cancer treatments."  (Pl.'s Resp. SOF ¶ 72, Ex. A, Brizzi Dep. at 107:6–15, 109:1–5.)  In contrast, Utica claims that Brizzi neither requested a reasonable accommodation nor notified Utica's HR department of her intention to do so.  (Def.'s SOF ¶ 72.)

Brizzi remained employed by Utica through the end of her leave, though the date on which her leave ended is unclear.  (Def.'s SOF ¶ 76; Pl.'s Resp. SOF ¶ 76.)  On March 9, 2018, Brizzi filed a Charge of Discrimination against Utica with the Equal Employment Opportunity

4

Commission ("EEOC").  (Def.'s SOF ¶ 2; Pl.'s Resp. SOF ¶ 2.)  On July 31, 2018, the EEOC issued Brizzi a Notice of Right to Sue.  (Def.'s SOF ¶ 3; Pl.'s Resp. SOF ¶ 3.)

## II.     Brizzi's Claims

Brizzi filed the instant action against Utica on August 31, 2018.  (Compl. (Doc. No. 1).)  She amended her complaint as a matter of course on September 21, 2018, primarily to correct Utica's full business name.  (Am. Compl. (Doc. No. 6).)  Brizzi's amended complaint alleges that Utica violated the ADA by failing to engage in an interactive process to determine what work Brizzi could perform, which the Court construes as a failure to accommodate claim.  (*Id.* at 9.)  Her amended complaint includes four causes of action.  Her first cause of action is an ADA discrimination claim.  (*Id.* at 10–11.)  Her second cause of is an ADA retaliation claim.  (*Id.* at 11.)  Her remaining causes of action allege state law claims brought under the NYSHRL for disability discrimination and retaliation.  (*Id.* at 12–13.)

## III.    Utica's Motion for Summary Judgment

Utica now moves for summary judgment on all of Brizzi's claims.  Utica argues that Brizzi cannot establish a prima facie claim for disability discrimination because Brizzi cannot establish that she could perform the essential functions of the job, with or without reasonable accommodation, and she cannot establish that the adverse employment action was based upon her disability. (Mem. of Law at 6–13.)  Utica also argues that even if Brizzi established a prima facie claim for discrimination under the ADA, Utica provided nondiscriminatory reasons for the elimination of Brizzi's position.  (*Id.* at 13–14.)  Moreover, Utica urges the Court to grant summary judgment on Brizzi's failure to accommodate claim, arguing that because Brizzi rejected the position that was offered to her, there was no interactive process to engage in.  (*Id.* at 14–15.)  Utica argues that even if it were obligated to engage in an interactive process, Brizzi

5

failed to assist in that process and identify what accommodations she needed to perform her work. (*Id.* at 15–19.)

Utica asserts that it is also entitled to summary judgment on Brizzi's ADA retaliation claim because Brizzi has not established that she engaged in a protected activity and that an adverse employment action resulted from that activity. (*Id.* at 19–20.) Utica argues that the Court should decline to exercise supplemental jurisdiction over Brizzi's NYSHRL claims but also argues that if the Court were to consider them, the NYSHRL claims fail for the same reasons that her ADA claims fail because the NYSHRL claims are governed by the same legal standards as ADA claims. (*Id.* at 21.)

In opposition, Brizzi argues that there is a disputed issue of fact as to whether Utica engaged in an interactive process regarding Brizzi's position and therefore summary judgment should be denied. (Opp. at 104–10.) Brizzi also argues that there is a disputed issue of fact as to whether Brizzi declined the Administrative Assistant position and therefore Utica's motion for summary judgment should be denied. (*Id.* at 112–17.) Brizzi contends that temporal proximity alone establishes that she suffered an adverse employment action because of her disability, noting the short amount of time between her protected activity – multiple surgeries – and termination. (*Id.* at 118–19.) Brizzi also argues that Utica's proffered non-discriminatory reasons for terminating her position are pretextual. (*Id.* at 119–20.)

Regarding her retaliation claim, Brizzi asserts that Utica is not entitled to summary judgment because there are disputed issues of fact regarding whether Utica refused to consider accommodating her because she had taken leave. (*Id.* at 120–21.) Finally, Brizzi disagrees with Utica that her ADA claims and NYSHRL claims are governed by the same legal standards. Specifically, Brizzi asserts that at the summary judgment stage, unlike in ADA claims, an

6

employer must show that it engaged in a good faith interactive process in order to prevail on its motion in NYSHRL claims. (*Id.* at 121–22.)

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, and affidavits demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it may impact the "outcome of the suit under the governing law." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed," and the Court must draw all "justifiable" or reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255 (citation omitted); *see also Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995) ("[T]he court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions . . . in the light most favorable to the party opposing the motion." (citations omitted)).

Once the moving party has demonstrated that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (collecting cases and stating that the non-moving party "may not rely on conclusory allegations or unsubstantiated

7

speculation"). In other words, the non-movant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.

In discrimination cases, "'smoking gun' evidence of discriminatory intent is rare and most often must be inferred." *Forsyth v. Fed'n Employment & Guidance Serv.*, 409 F.3d 565, 569 (2d Cir. 2005) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)), *abrogated on other grounds*, *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007). Accordingly, the Second Circuit has "repeatedly emphasized 'the need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)).

## DISCUSSION

### I. Brizzi's ADA Disability Discrimination Claims

The ADA prohibits discrimination against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination under the ADA includes adverse employment actions based on an employee's disability, *see id.*, and "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

#### a. Failure to Accommodate

A plaintiff states a prima facie failure to accommodate claim by demonstrating that:

8

> (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009) (internal quotation marks omitted).  In discrimination claims based both on adverse employment actions and on failures to accommodate, the plaintiff "bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [her] to perform the essential functions of [her] employment." *McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013) (quoting *McBride*, 583 F.3d at 97).  Whether or not an accommodation is reasonable is a fact-specific analysis that muse be analyzed on a case-by-case basis.  *Wernick v. Fed. Reserve Bank of New York*, 91 F.3d 379, 385 (2d Cir. 1996).  "[A]n employee's request for an accommodation triggers a duty on the part of the employer 'to investigate that request and determine its feasibility.'"  *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 185 (2d Cir. 2006) (quoting *Parker v. Columbia Pictures Industries*, 204 F.3d 326 (2d Cir. 2000)).  "An employee need not mention the ADA or even the term 'accommodation' so long as the employer has knowledge of the disability."  *Mendillo v. Prudential Ins. Co. of Am.*, 156 F. Supp. 3d 317, 341–42 (D. Conn. 2016) (internal quotations and citations omitted); *see also Medlin v. Rome Strip Steel Co.*, 294 F. Supp. 2d 279, 292 (N.D.N.Y. 2003) ("so long as the employee makes the employer aware of his condition and that some accommodation is requested, the employer has at least some responsibility to reasonably engage in the interactive process and determine the appropriate accommodation.").

Utica does not dispute that Brizzi (1) has a disability under the meaning of the ADA, and (2) that Utica is covered by the statue and had notice of Brizzi's disability.  Utica argues that Brizzi cannot establish that she was qualified to perform the essential functions of the

9

Administrative Assistant position, even with reasonable accommodation, and because Brizzi rejected the Administrative Assistant position, there was no interactive process to engage in. The Court disagrees.

Here, Utica terminated Brizzi's Marketing Trainee position while she was out on leave for multiple surgeries. There is also no dispute that Utica was aware of Brizzi's medical condition. She was offered a new position – Administrative Assistant – which paid less and required Brizzi to be in the office full time. Utica claims that Brizzi promptly rejected the offer and therefore there was nothing for Utica to accommodate. Drawing all reasonable inferences in favor of Brizzi, there is a disputed issue of fact as to whether Brizzi rejected the position. Deposition testimony from those on the call (Brizzi, Weigand, and LaPlante), as well as documents produced by Utica during discovery conflict. Weigand and LaPlante testified that Brizzi was told that the position would be held open for her until she returned from leave while Brizzi testified that she was not told the position would be held open for her. Additionally, Utica produced a document that LaPlante prepared the call with Brizzi informing her of reorganization. The documents states that if the Administrative Assistant position offered to Brizzi was filled by the time she returns from leave, she would be eligible for severance. In other words, Utica's document contemplates that the Administrative Assistant position would not be held open for Brizzi as Weigand and LaPlante testified; instead, the position could be filled by someone else while Brizzi was on leave. In that scenario, Brizzi would be eligible for severance as she would no longer be employed by Utica because the Administrative Assistant position would be filled by someone else.

Additionally, while Brizzi admits that she had reservations about the position because she had to be home to care for family members, she testified that she did not reject the position on

the call. Weigand and LaPlante claim that Brizzi rejected the Administrative Assistant position during the call and they then sent Brizzi a letter memorializing their understanding of the conversation. Drawing all factual inferences in Brizzi's favor, there is a disputed issue of fact as to whether Brizzi rejected the Administrative Assistant position. Therefore, the Court cannot accept Utica's argument that the need to engage in an interactive process in making the Administrative Assistant position offer was foreclosed by Brizzi's rejection of the offer.

Utica asserts that even if it were obligated to engage in an interactive process with Brizzi to assess what accommodations for her disability would allow her to work, it "fulfilled its obligations under the ADA" because Brizzi did not provide "all of the necessary information concerning her disability." It cites to a single case, *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 579 (S.D.N.Y. 2008), in support of this argument. However, *Monterroso* does not support Utica's argument. In *Monterroso*, the defendant-employer argued that Monterroso refused to participate in the interactive process by "refusing to provide the [defendant] with medical information that would substantiate her claimed disability and help the parties identify potential accommodations" and instead "providing only vague and conclusory information about her alleged disability." *Id.* at 580. After a close review of the specific facts of the case, the Court found the defendant's argument, "that the allegedly scant information provided by Monterroso was insufficient to identify any potential reasonable accommodations," "somewhat disingenuous" and denied defendant's motion for summary judgment on this claim. *Id.* at 581. While an employee seeking an accommodation is obliged to assist the employer to identify her limitations, a defendant-employer is not entitled to summary judgment on an ADA discrimination claim simply because in the moment where a plaintiff requests an accommodation the plaintiff does not provide "all of the necessary information concerning her disability and

11

what limitations she had as a result of it." (Mem. of Law at 15.) As discussed further below, any conversation between Brizzi and Utica regarding accommodations was foreclosed by Utica's flat refusal to engage.

The Court cannot conclude, as a matter of law, that Brizzi failed to engage in an interactive process. First, there is no dispute that Utica was well aware of Brizzi's medical conditions and that when her Marketing Trainee position was terminated, she was on leave for multiple surgeries. Second, Utica's counsel asked Brizzi during her deposition if Brizzi asked Utica for an accommodation. Brizzi's testified that she asked Weigand "if Utica would consider getting two part-timers so [she] could continue [her] cancer treatments" and that in response, Weigand said no. (Ex. A, Brizzi Dep. 108:21–109:11.) While Brizzi never formally requested an accommodation through HR, a formal request to HR is not necessary to trigger Utica's responsibility to investigate the request and engage in an interactive process. Utica concedes that it did not engage in an interactive process or investigate Brizzi's request. Instead, Utica argues (1) that it previously accommodated Brizzi's requests for a modified work schedule several times and (2) that Brizzi's proposal of hiring two part-time employees while she underwent cancer treatment was not a reasonable accommodation. (Mem. of Law at 16–19.) Neither argument excuses Utica's duty to investigate Brizzi's request and determine its feasibility. *See Graves*, 457 F.3d at 185. Accordingly, Utica's motion for summary judgment on Brizzi's failure to accommodate claim is denied.

      **b. Disability Discrimination**

          **i. The *McDonnell Douglas* Framework**

"The Supreme Court's decision in *McDonnell Douglas* 'established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-

12

treatment cases.'" *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). The *McDonnell Douglas* framework has been applied to ADA cases as well as Title VII discrimination cases. *Trane v. Northrop Grumman Corp.*, 94 F. Supp. 3d 367, 376 (E.D.N.Y. 2015), *aff'd*, 639 F. App'x 50 (2d Cir. 2016). At the first step of the *McDonnell Douglas* framework, "a 'plaintiff must prove by a preponderance of the evidence a *prima facie* case' of discrimination …." *Rakowsky v. Nielsen*, 744 F. App'x 743, 744 (2d Cir. 2018) (summary order) (quoting *D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007)). "The plaintiff's burden of proof as to this first step has been characterized as minimal and *de minimis*." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotations marks and citation omitted). "However, it is not non-existent and [s]ummary judgment must be granted whenever the undisputed facts, viewed most favorably to the non-moving plaintiff, do not make a prima facie case." *Robles v. Cox & Co.*, 987 F. Supp. 2d 199, 206 (E.D.N.Y. 2013) (internal quotation marks omitted).

At the second *McDonnell Douglas* stage, the defendant has "the burden of producing an explanation to rebut the prima facie case—i.e., the burden of 'producing evidence' that the [defendant's allegedly discriminatory] actions were taken 'for a legitimate, nondiscriminatory reason.'" *Bucalo*, 691 F.3d at 128–29 (quoting *Hicks*, 509 U.S. at 506–07). If "the defendant satisfies its burden of production," the burden shifts back to the plaintiff, who must "demonstrate that the proffered reason was not the true reason for the employment decision." *Id.* at 129. If the plaintiff fails "to show that there is evidence that would permit a rational factfinder to infer that the [defendant's] proffered rationale is pretext, summary judgment dismissing the claim is appropriate." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) (citing *Smith v.*

13

*Am. Express Co.*, 853 F.2d 151, 154–55 (2d Cir. 1988) (affirming summary judgment in light of plaintiff's failure to present more than conclusory and substantially unsupported assertions that employer's proffered race-neutral rationale for denial of promotion was pretext)).

### ii. Prima Facie Case

> To establish a prima facie case of discriminatory discharge under the ADA, an employee bears the burden of demonstrating that: 1) he was an "individual who has a disability" within the meaning of the statute; 2) the employer had notice of his disability; 3) he could perform the essential functions of the job with reasonable accommodation; and 4) the employer refused to make such accommodation. *See Stone v. City of Mount Vernon*, 118 F.3d 92, 96–97 (2d Cir.1997), cert. denied, 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998).

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000).  The Second Circuit has held that a plaintiff must also "show 'the *connections* between (1) the failure to accommodate a disability, (2) the performance deficiencies, and (3) the adverse employment action.'" *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (quoting *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 108 (2d Cir. 2001) (emphasis in *Parker*)).

"[A]n employee who proposes an accommodation while still on short-term leave . . . triggers a responsibility on the employer's part to investigate that request and determine its feasibility.  An employer who fails to do so, and instead terminates the employee based on exhaustion of leave, has discriminated 'because of' disability within the meaning of the ADA." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000).  The Second Circuit has explained that *Parker* stands for the "proposition that an employer's failure to make a reasonable accommodation, particularly when coupled with a refusal to engage in a sufficient interactive process, makes out a prima facie case of disability discrimination where the plaintiff has also made a sufficient showing that, *inter alia*, she is qualified for the position at issue." *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 102 (2d Cir. 2009).

14

Utica does not dispute that the first two elements of Brizzi's prima facie ADA discrimination claim are established. Utica argues that it is entitled to summary judgment because Brizzi fails to establish that even with reasonable accommodation, she could perform the essential functions of the Administrative Assistant position. Specifically, Utica points to the fact that she was unable to work full time in the office and therefore many of the receptionist-related duties of the position, like greeting visitors, could not be performed part time while working from home. In opposition, Brizzi argues that Utica's failure to investigate what accommodation she would need and for how long foreclosed any interactive process through which the parties could have addressed staffing issues while Brizzi recovered. Brizzi also points out that Utica does not challenge that she had the necessary skills or responsibilities for the Administrative Assistant position, the only question was whether she could or could not work full time and in the office.

Had Brizzi been able to work full time and in person, there is no doubt that she would be qualified for the Administrative Assistant position that Utica offered to her and hoped that she would accept. This position was offered to her after Utica reorganized its employee staffing and eliminated Brizzi's prior position, while Brizzi was on leave recovering from multiple surgeries. The only doubt that both Brizzi and Utica had about her ability to fulfill this position was whether she could work full time and in person. As discussed above, Brizzi testified that she asked Weigand "if they would consider getting two part-timers so [she] could continue [her] cancer treatments." Weigand said no. There was no interactive process between Utica and Brizzi to determine what accommodations could be made, if any, to allow Brizzi to accept the position while she continued her cancer treatments. After refusing to engage in an interactive process to determine what accommodations, if any, would allow Brizzi to fulfill the position,

15

Utica cannot now argue that it is entitled to summary judgment on the basis that Brizzi was not qualified for the Administrative Assistant position even with accommodations. Accordingly, drawing all factual inferences in favor of Brizzi, the Court finds that Brizzi has made a sufficient showing that she is qualified for the Administrative Assistant position.

Moreover, in light of the reasoning in *Parker* and *McBride*, the Court also finds that Brizzi has also satisfied the final element of a prima facie case of disability discrimination – that she suffered an adverse employment action because of her disability.

Under the *McDonnell Douglas* framework, once Brizzi has established a prima facie case, the burden shifts to Utica to offer a legitimate, nondiscriminatory reason for the adverse employment action. Utica offers a single non-discriminatory reason for its adverse employment action against Brizzi: that companies are permitted to restructure for economic reasons, which can result in the reduction in workforce. (Mem. of Law at 13–14.) While this argument offers a legitimate reason for Utica's restructuring and elimination of Brizzi's Marketing Trainee position, it does not offer a legitimate, nondiscriminatory reason for terminating Brizzi after offering her the Administrative Assistant position and then refusing her accommodation request. As such, the Court finds that Utica is not entitled to summary judgment on Brizzi's ADA discrimination claim.

    c. **Retaliation Claim**

In her second cause of action, Brizzi alleges that Utica retaliated against her when she suffered an adverse employment action for taking short-term disability leave. Section 12203 of the ADA declares that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding,

or hearing under this Act." 42 USCS § 12203. To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action. *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) (internal quotations omitted).

> The term "protected activity" refers to "action taken to protest or oppose statutorily prohibited discrimination, and may take the form of either formal or informal complaints." *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 267 (E.D.N.Y. 2015) (quoting *Chan v. Donahoe*, 63 F.Supp.3d 271, 294 (E.D.N.Y. 2014)). A request for FMLA leave, without more, cannot constitute a protected activity for the purposes of an ADA retaliation claim.

*Kastrati v. Progress of Peoples Mgmt. Corp.*, No. 18-CV-6731 (LDH) (LB), 2020 WL 6940991, at *5 (E.D.N.Y. Nov. 24, 2020).

Brizzi's allegations of her retaliation claim are thin. She bases this claim on the fact that she suffered an adverse employment action because she took short-term disability leave for cancer treatment. (Am. Compl. ¶ 73.) However, it unclear from the amended complaint what Brizzi maintains constituted a protected activity to make out a prime facie retaliation case. Therefore, Utica is entitled to summary judgment on Brizzi's ADA retaliation because Brizzi has failed to establish that she engaged in a protected activity.

## II. Brizzi's State Law Claims

Utica urges dismissal of Brizzi's NYSHRL discrimination and retaliation claim on the same bases as it urges dismissal of her ADA claims. (Mem. of Law at 20.) Relevant here, "[a] claim of disability discrimination under the NYSHRL is governed by the same legal standards as govern federal ADA claims. Thus, to the extent that [a plaintiff] brings a state-law disability-discrimination claim, it survives or fails on the same basis as [plaintiff's] ADA claim." *Graves v.*

*Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006). Accordingly, Brizzi's disability discrimination claim under the NYSHRL survives and her retaliation claim under the NYSHRL is dismissed.

## CONCLUSION

For the reasons set forth above, Utica's motion for summary judgment is granted as to Brizzi's retaliation claims under the ADA and NYSHRL. Summary judgment is denied as to all other claims. This action is recommitted to Magistrate Judge Ramon E. Reyes Jr. for all remaining pre-trial matters, including settlement discussions if appropriate.

SO ORDERED.

Dated: Brooklyn, New York
      March 26, 2021

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge